FILED
OCT - 3 2012
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ELIZABETH LETOURNEAU
7829 Belle Point Drive
Greenbelt, MD 20770
(360-441-8004)

Plaintiff,

v.

Case: 1:12-cv-01644
Assigned To : Walton, Reggie B.
Assign. Date : 10/3/2012
Description: Pro Se Gen. Civil

JURY ACTION

ANTHONY CALANDRA (Capt.),
NAVY GATEWAY INN AND SUITES,
SECRETARY OF DEFENSE,
DEPT OF THE NAVY,
DEPT OF DEFENSE,
1000 DEFENSE PENTAGON
WASHINGTON, DC 20310-1000

Defendants.

**CIVIL COMPLAINT**

**JURY TRIAL DEMANDED**

## JURISDICTION AND VENUE

1. Plaintiff brings this action under the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973, as amended, and U.S.C. 42 § 1983 for deprivation of civil rights under law.

2. This court has jurisdiction pursuant to the following statutes:

   a. 28 U.S.C. § 1331 which gives district courts jurisdiction over actions arising the Constitution, laws, or treaties of the United States.
   b. 28 U.S.C. § 1343 which gives district courts jurisiction over actions to secure civil rights extended by the United States government;
   c. 28 U.S.C § 1367which gives district court supplemental jurisdiction over state law claims.
   d. 42 U.S.C. § 2000a-6The district courts of the United States shall have jurisdiction of proceedings instituted pursuant to this subchapter and shall exercise without regard to whether the aggrieved party shall have exhausted any administrative or other remedies that may be provided by law.

apply) is located in this judicial district of the District of Columbia and is subject to federal laws in accordance with District and federal law.

## FACTS

1. Plaintiff is a military spouse. Plaintiff is U.S. citizen. born in Korea.

2. Plaintiff was assaulted and attacked by non-military guest in a non-secured laundry room owned by Navy Gateway Inn and Suites in August 2012, approx. Plaintiff's personal property was also stolen/missing from the laundry room which is accessible by anyone who is a guest on base and non-military or has been allowed on base with photo ID.

3. Plaintiff spoke with Navy Gateway Inn and Suites Lodging manager about situation. Plaintiff was told she was barred from lodging but was not given a written or reasonable explanation, other than she had caused a disturbance at Navy Gateway Inn and Suites.

4. Plaintiff alleges other residents at Navy Gateway Inn and Suites (NGIS) have not been barred from lodging and have caused disturbances at NGIS under the same Dod policy law enforced against Plaintiff.

93% capacity, but 93% capacity is not full. It also appeared the Commander did not understand that her dorm was for enlisted only, so his statistics for the entire lodging were not accurate.

10. Plaintiff asked Commander via email if she could reside in lodging and Commander stated after an extended period of time which he did not specify.

11. Plaintiff notes that Commander's attitude towards her was antagonistic even though Plaintiff shared sensitive information about the legality of her stay in the NCR (national capital region) and her requirement to be here under Federal law in compliance with several Federal agencies and investigations.

12. Plaintiff then received by Navy Police at 10 pm Saturday night approx Sept 15th a letter stating she was barred from base lodging until further notice and criminal charges would apply including a bar from the base itself if she attempted to stay in or visit anyone in base lodging or the premieses thereof.

13. Plaintiff had no time to arrange a pickup of her things, and was told her things would be disposed of after noon on Sunday Sept 16th. This was contrary to base policy and the guarantee plaintiff received from two lodging managers that

7. Plaintiff explained the situation to the Commander and promised that no more disturbances would be made. It is important to note up to this point Plaintiff had paid for lodging and her room, although the lodging manager had locked her out of her room and she had no access to her personal property. The manager previously ordered her to be allowed to access her items, but a note at the front desk barred her from retrieving anything from her lodging room that she was being charged for on a daily basis. Plaintiff also alleges lodging overcharged her for her room, and did not comp her for the nights they promised, when other guests were disturbing her by locking her out of the bathroom, and knocking on her door drunk at various hours of the day and night. The reason plaintiff was not comped was due to the fact the lodging manager fired her assistant manager Helen Holland who promised plaintiff that her nights of unrest would be comped to accommodate plaintiff's disability, as acknowledged by the assistant manager.

8. Plaintiff resided at the Navy Lodge on JBAB and paid $75 to $100 a night in addition to paying for the room in NGIS in which she was locked out. Since this installation's jurisidiction falls in DC plaintiff is asking for investigation of a violation of DC law in addition to federal and constitutional law violations.

9. Plaintiff was given an email by the Base Commander in which she had time to get her stuff and then had to move. The email cited that the lodging was at

5. Plantiff then spoke with the Commander of Joint Base Anacostia Bolling (JBAB) to request the ability to stay in lodging on a Space Available basis. During Plantiff's stay at NGIS plaintiff noticed space was always available, due the fact her lodging was essentially a single room (dorm) with a shared bathroom. The dorm like construction and tight quarters makes the lodging noisy so noise problems are frequent. Plaintiff alleges other than being noisy in the laundry room she did not cause any disturbance that was any different frequently being caused by other guests on a routine basis, yet DoD policies were not being enforced against other noisy guests, including guests who bothered Plaintiff by banging on her door and locking her out of the shared bathroom.

6. Plaintiff was told a decision would be rendered, so she did not gather her items or look for a new place, since DoD policy allows military spouses to stay in lodging on a Space available (space A) basis and space was available in lodging. The other factor that made space available in the shared bathroom dorms is the fact only enlisted are eligible to stay in that lodging, whereas the rest of base lodging (except for the 12 houses reserved for individual Generals only and their entourages) are available to officers, enlisted, and eligible residents.

3. Venue is appropriate in this judicial district under 28 U.S.C. §1391 because the events that gave rise to this Complaint occurred in this District.

**PARTIES**

4. Plaintiff is a citizen of the United States and resides in the County of the District of Columbia, which is in this judicial district.

5. Defendant is the Commander and Captain of Joint Base Anacostia Bolling is sued in his official capacity as Commander. As such he has a duty to insure that the military base's federally funded program is adminstered in accordance with federal law. Defendant is Secretary of Defense and is required to maintain DoD policies that do not violate Constitutional rights of civilians and military spouses (under sworn oath) and that do not violate federal laws in conjunction with programs designed to help those receiving services as mandated by federal law they are eligible for under DoD enacted policies.

6. Defendant Navy Gateway Inn and Suites is a DoD federally funded lodging that receives federal financial assistance providing programs and public accommodations acting under the color of federal law to those eligible under Defense policy, including military spouses and widows of veterans (exclusions

her items could be secured by lodging for up to 30 days should she have to leave lodging. Plaintiff is alleging lodging discriminated against her by not allowing her to store her stuff for 30 days as previously promised and stated by lodging as standard lodging operating procedure for guests (plaintiff paid her bill on time as noted) and retaliated against her because of her race (Under title VI 42 U.S.C. 2000d) gender, disability, and for filing a complaint with the Dept of the Navy Inspector General (IG) office.

14. Plaintiff was injured during her stay in lodging which will be addressed further in discovery. Plaintiff notified lodging managers of hazard which created injury to plaintiff prior to injury cause by lodging negligence.

15. Plaintiff's property was taken from her which amounts in civil court terms to conversion. Property estimated value is $700, but sentimental and psychological value should be also be held in account.

16. Plaintiff is currently homeless and has nowhere to go. Hotels in DC run $100-$200 a night ($500 downtown), plaintiff's current monthly income of $1400 is not enough to afford hotels in the area. Plaintiff has legal necessity to stay in the DC area and is eligible for lodging at JBAB, as well as the right to stay in

lodging, protect her property from being stolen, when Plaintiff knows under further investigation the court would find there is lodging available in federally funded accomodations in which Plaintiff resided.

17. As a direct and proximate result of this discriminatory action caused by the Defendant's willful violation of the Constitution as stated in Counts below Plaintiff has suffered injuries, damages, loss of property, and loss of dignity which should also be considered by the Department of Defense for criminal charges under the UCMJ starting with punitive Article 133.

18. The Lodging Manager's discriminatory policies that create unconstitutional practices for civilians and military should be investigated by civilian authorities, as well other government agencies or non-profit civil rights legal advocates. Discrimination and abuse of the constitution so the lodging manager can create environments of favoritism towards certain ethnic groups and give more privileges based on gender biases should not be tolerated: the military should be creating an environment of tolerance and support for military families, instead of throwing them out on the street.

19. I allege that the following of my constitutional rights, privileges, or immunities have been violated and that the following counts form the basis for my

claim for injunctory relief, damages, and any other relief the court deems just and equitable.

20. Under Title III of the ADA Any person who is being subjected to discrimination on the basis of disability in violation ADA on the basis of disability may file a civil action for injunctive relief. Also when a person has reasonable grounds for believing he or she is about to be subjected to discrimination because of a violation of the disability accommodation requirements of the ADA he or she may file a civil action.

**COUNT I**

**VIOLATION OF ADA TITLE III**

21. Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2).

22. ADA Title III requires that public accomodations including lodging prohibits discrimination against any "individual with a disability."

23. Plaintiff alleges that disability discrimination was used because plaintiff was denied equal access to enjoyment and use of lodging due her disability, which can impair and limit emotional judgment.

24. Plaintiff can receive treatment for her disability from medical centers at JBAB, but is barred from lodging, which increases likelihood disability will worsen, and plaintiff will suffer from worsening symptoms, which should not be the goal of the military to instigate, but based on defendant's actions, denial and access to treatment and services including lodging or further resources seem to be the primary goal of DoD. Being homeless would put any reasonable person in a state of emotional panic, which further impairs Plaintiff's functioning and ability to get further resources to put disability symptoms under control. Plaintiff also alleges that employees of NGIS assisted her with getting services until the lodging manager retaliated against plaintiff for filing grievances. Plaintiff was not receiving assistance from any other military organizations, NGIS was her only support system until the lodging manager acted against her in a discriminatory manner for having a disability, and retaliating against plaintiff for filing complaints.

25. As a result of Defendants' actions, Plaintiff has suffered deprivations of the rights guaranteed under the Fourteenth Amendments to the Constitution of the United States. By doing the acts described above Defendants caused and /or permitted the violation of the Plaintiff's right to Due Process guaranteed by the Fourteenth Amendment and Equal Protection clause of the Constitution, as well as

Seizure of property under the Fourth Amendment, thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

**COUNT II**

**CONVERSION OF PROPERTY**

26. Plaintiff alleges NGIS committed malfeasance in the intentional tort of conversion by causing interference in plaintiff's property. NGIS lodging manager gave away,sold, or lent plaintiff's property which tortfeasor had no legal title over. Base Commander ordered that plaintiff be trespassed from lodging so plaintiff could not return to pick up items, and DoD acted negligently in allowing Commander to discriminate against plaintiff by not allowing lodging policy of property storage for up to 30 days in action that was discriminatory and retaliatory by defendants.

27. Base Commander allowed manager to evict and bar Plaintiff from residing in her lodging residence as of August 23, 2012, yet Lodging Manager has charged Plaintiff approx. $2500 for storage of property, while Plaintiff was trespassed from Lodging and then from Base altogether. Commander and Lodging Manager are guilty of evicting Plaintiff as of August 23, 2012, charging Plaintiff $40 per day until the Date of October 1, 2012, seizing Plaintiff's property, and

making a crime under Federal Law for Plaintiff to access her personal affects, property, or any services on base.

**28.** The military routinely finanances moves for Dependents, including under special circumstances with appropriate letter from DoD officials. Plaintiff has not ever received any assistance or compensation in moving or securing items. Plaintiff has assisted with numerous federal investigations costing Plaintiff tens of thousands of dollars in travel expenses and lodging; allowing DoD to save hundreds of thousands, possibly millions, in salaries and retirements to servicemembers guilty of misconduct. Yet DoD not only refused Plaintiff shelter at cost of $1100 per month, roughly 78.5% of plaintiff's income, (Plaintiff's salary is $1400 a month, Captain Calandra's yearly income is $8000 per month plus BAH ($3400 for officer of Defendant's rank with dependants, approx a $135,000.00 annual salary.) but according to Defendant's policies Defendant did not compensate Plaintiff at any time, charged both her debit cards for seizing Plaintiff's property and criminally trespassing Plaintiff, without Plaintiff's authorization for use, and refused to store Plaintiff's items for the standard 30 day under which all others in Plaintiff's position are allowed to enjoy as part of their eligibility under DoD policies. Plaintiff is not allowed to stay in eligible housing at 93% fullest capacity, as plaintiff cooperates in federal investigations to save Defendant money and stop misconduct by its employees through its investigative process.

**COUNT III**

**GENDER DISCRIMINATION**

29. Plaintiff was arrested after being assaulted by Navy Police for self-defense against assault. The attacker was a black female who did was not currently serving in the military or a dependent of someone serving in the military. The Navy Police did not get a written statement from her.

30. Plaintiff alleges Navy Police discriminated by arresting her and fabricating charges against her. DOJ did not touch the case, all charges were dismissed, and after 20 hours of being held with no food or water, Plaintiff was released without charges.

31. Navy Police neglected and failed to conduct a proper investigation; and Navy Gateway Inn and Suites negelected to provide adequate security so that property was not stolen from laundry room. Plaintiff was harassed by non-servicemembers using the laundry room and stealing property from the laundry room but NGIS refused to secure laundry room facilities and make services for guests that were safe and free from endangering their welfare or putting them in harm's way. Lodging was put on notice by Security forces and NGIS staff to hazardous conditions created by laundry room being accessed by non-guests and

thieves, and other hazardous conditions created by gross negligence in NGIS to provide adequate funding, as stated by Captain Calandra that he did not have enough money to fix the laundry room issue.

32. NGIS also claimed that Plaintiff's necessity to share a bathroom with another female only under DoD policy created a situation that limited the amount of rooms available to males. Plaintiff alleges that other guests in lodging violated lodging policies by having overnight guests to their room anyways, so single bathrooms were often shared by three individuals, and that females that did come into the lodging on a TDY basis should not be bar the Plaintiff from being able to have a shared bathroom dorm with another female, or prevent Plaintiff from utilizing a room, regardless of her gender and the 93% capacity claims made by the Base Commander.

33. There is a double standard in the military in enforcement of laws against men and women. Men are allowed to rape, assault, and degrade women as evidenced by past court cases. Men are allowed to drink and treat women like property (women are treated as such regardless of status as servicemember or dependent.) Being assaulted is a form of pschological warfare and has not been stopped regardless of DoD programs. Court intervention is required when the military is allowed to bully and discriminate against already exploited individuals,

using federal funding and means to allow them to enforce policies, force others to carry out these policies or else be in violation of disobeying an order under the UCMJ, and create policies under DoD "official orders" in violation of federal laws.

**COUNT IV**

**OUTRAGEOUS CONDUCT**

34. Plaintiff realleges and incorporates counts 1-7 of the complaint herin that the conduct is so outrageous that it exceeds all bounds of common decency usually tolerated by a civilized society.

**COUNT V**

**VIOLATION OF TITLE VI**

35. A State (In this case a federally owned territory) shall not be immune from suit in Federal court for a violation of title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

36. Plaintiff is eligible under DoD policy to receive benfits at JBAB and Navy Gateway Inn and Suites, both recipients of Federal funding.

37. Sec. 2000d. Prohibition against exclusion from participation in, denial of benefits of, and discrimination under federally assisted programs on ground of race, color, or national origin.

38. Plaintiff lists services being denied access to in violation of Title VI., which prohibits exclusion of participation in federally funded programs to those elibible under DoD policy. SPACE A travel (Free airfare travel for spouses of active duty members. Plaintiff spent $7,000 of own money in airfare and hotel costs to assist DoD in a federal CID investigation, due to neglect of DoD to infrom Plaintiff of Space A travel availability under which eligible spouses are given free travel.)

LIBRARY (FREE INTERNET)

TAX FREE COMMISSARY FOOD

FREE PARKING (PARKING IN DC RUNS $25-$40 PER DAY)

CHEAPER GAS (PX GAS)

FREE EVENT TICKETS (LIMITED)

OTHER SERVICES TO BE DETERMINED BY DOCUMENTATION

## COUNT VI

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

39. Plaintiff suffered psychological damages are as a result of the military's negligence to provide adequate, safe housing, enforce fair policies consistently, properly train their police force, and prevent discrimination and retaliation for reporting misconduct by federal employees who are defrauding, wasting, and abusing their government authority under the power of the military using federal funding, in violation of Plaintiff's constitutional rights.

40. Plaintiff did have support group around fellow residing (enlisted, not officer) servicemembers and base staff. Due their psychological conditions and trauma, plaintiff and servicemembers provided morale, even just by listening to each other's stories. Since the military neglects to provide adequate mental health services (Plaintiff asked Army LT. General John D Johnson for help obtaining services and was denied assistance) having some support from other servicemembers provided a minimum amount welfare that is now denied due to the Base Commander preventing plaintiff from basic

human fundamental values such as forming and devoloping friendships from others who are also going through hardships. The military seems to have a hostile view of information being shared, but through these small talks Plaintiff was better able to utilize services accessible through the military through dependent eligibility Plaintiff was previously unaware of and unknowledgeable due to negligence of military to provide lessor ignorance of programs for which spouses and dependents are eligible.

## COUNT VII

## BREACH OF CONTRACT

41. Courts have permitted business plaintiff's to recover tort damages for breaches of contracts. Further documentation will be provided in discovery.

## REQUEST FOR SOUGHT RELIEF

WHEREFORE, the plaintiff requests:

Compensatory damages, including general and special damages, and Medical cost reimbursement.

Having set forth numerous legally sufficient causes of action against the Defendants, Plaintiff prays for the entry of Final Judgment against all Defendants jointly and severally in an amount of $250,000.00 and other amounts not yet quantified and such other amounts to be proven at trial, and for costs and attorney's fees; that the Court finds that the transactions subject of this action are unconstitutional and are deemed in violation of federal law; that the Court order relief for damages incurred and pending as a result of federal law violations, and/or Injunctive relief as deemed necessary to prevent further law violations, and for any other and further relief which the court may deem appropriate and just.

Very Respectfully Submitted,

Elizabeth LeTourneau
7829 Belle Point Drive
Greenbelt, MD 20770

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information contained therein is true and correct. 28 U.S.C. Sec. 1746. 18 U.S.C. Sec. 1621.

Executed at Washington D.C. (Location) on Sept. 20 (Date) 2012.

(Signature)

Elizabeth Letourneau-[redacted]

Exhibit A

ELIGIBILITY FOR USE OF ARMY LODGING

AUTHORIZED OCCUPANTS

Availability of Transient UPH. The following personnel may occupy transient UPH:

On a Confirmed Reservation Basis. All TDY DoD personnel; PCS military personnel with or without family members, or family members alone, when TLFs or permanent quarters are not immediately available; Reserve component personnel on a special tour of active duty or on active duty for training and during periods of scheduled inactive duty training at an installation; DoD-sponsored TDY foreign nationals; family members of Service members on medical TDY orders; and guests of the Armed Forces as determined by the installation commander.

On a Space-Available Basis. Non-military uniformed personnel of the U.S. Public Health Service and National Oceanic and the Atmospheric Administration, foreign military personnel, and U.S. Coast Guard, when authorized by the installation commander; and retirees, military personnel on leave, and relatives or guests of military personnel assigned to the installation when TLFs are not available.

12 1644

FILED

OCT - 3 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia